## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,     )

                                   )     **Criminal No. 07-152-01 (ESH)**

                                   )

v.                                   )

                                   )

                                   )

ANTHONY MARCUS SUGGS, et al.,     )

                                   )

     Defendants.               )

_____)

## MOTION TO SUPPRESS EVIDENCE
### *(Sugg's Pretrial Motion #1)*

The Defendant, Anthony M. Suggs, by and through his attorney, Patrick M. Donahue, moves this Honorable Court, pursuant to Fed.R.Cr.P. 12, to suppress as evidence against him any and all tangible and intangible evidence obtained by law enforcement as a result of the search of 4000 10th Street, N.E., Washington D.C., as such evidence was obtained in violation of Anthony Sugg's Fourth Amendment Rights. In support of this Motion the Defendant submits the attached Memorandum of Points and Authorities. In addition, the Defendant requests that the Court set an evidentiary hearing on this Motion so that the true facts and circumstances of the searches can be established.

**WHEREFORE**, for the reasons stated in this Motion, the attached Memorandum, and any others that may become apparent at the hearing on this Motion, the Defendant requests that the Court order that all tangible and intangible evidence obtained by the Government as a result of the March 27, 2007 search of 4000 10th Street N.E. and thereafter obtained as fruits

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

of such searches, be suppressed, and order such other relief as the Court may deem proper and necessary.

Respectfully submitted,

**THE DONAHUE LAW FIRM**

By:  _____

Patrick M. Donahue, Esquire
D.C. Bar No. 358184
18 West Street
Annapolis, Maryland 21401
Telephone:  410-280-2023

Attorney for Defendant, Anthony M. Suggs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of November, 2007, that this Motion to Suppress Evidence and attached Memorandum of Points and Authorities was served on all parties by the electronic filing system of the United States District Court for the District of Columbia.

_____

Patrick M. Donahue

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 07-152-01 (ESH) |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| ANTHONY MARCUS SUGGS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

## I.    FACTS

On March 27, 2007, the defendant Anthony Suggs was at has girlfriend's home, where

he resided, located at 4000 10th Street N.E. Washington D.C.  At approximately 7:15 p.m.,

members of the Metropolitan Police Department along with the Fire Department arrived at the

premises.  At the time, neither the police officers present nor the Fire Department presented a

warrant to search the premises.

Mr. Suggs spoke with them outside in front of the residence.  They advised that they

did not have a warrant and advised that they had received a complaint regarding a strange

odor coming from the premises.  Mr. Suggs denied any odor existed and objected to any

search; nonetheless, the Fire Department proceeded to search the premises for approximately

20 minutes without a warrant while Mr. Suggs was detained outside.  After the Fire

Department search and a private consultation with MPD, and again over objection, a member

of the MPD searched the premises, without a warrant, for an additional 20 minutes.

Throughout that period Mr. Suggs was detained in the front of the premises.  Following the

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

searches by the Fire Department and MPD the premises was secured and, thereafter, Mr.

Suggs was detained for hours in front of the building while police sought a search warrant for

the premises.  Ultimately, late that night, at approximately ten o'clock, police conducted a

search of the premises with the warrant which they had just obtained.  As a result of the

multiple searches, MPD seized, according to the Warrant Return, a "Styrofoam cooler

containing (7) bottles with liquids with a chemical smell, blue bag containing 3 bottles with

liquids, pair of gloves, three masks, two funnels, trash bag containing three buckets and pyrex,

$7,000.00 in U.S. currency, receipt, incense, seven bottles with liquid with chemical smell,

black plastic bag, clear plastic bag, leather bag."

## II.    LAW

The Fourth Amendment provides that,

> "The right of the people to be secure in the persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated, and
> no Warrants shall issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized."
>
> U.S. Const. amend. IV.

The Supreme Court has defined probable cause to search as, "a fair probability

that contraband or evidence of a crime will be found in a particular place."  See

Illinois v. Gates, 462 U.S. 213, 338 (1983).   The Supreme Court also held, in Katz v.

United States, 389 U.S. 347, 357 (1967), that it is a basic constitutional rule that

warrantless searches are per se unreasonable.  There is no question that physical entry

of the home is the chief evil against which the wording of the Fourth Amendment is

directed.  See Payton v. New York, 445 U.S. 573, 585 (1980).  A search of a private

residence is unreasonable unless the search is authorized by a valid warrant.  Camara

v. Municipal Court, 387 U.S. 523, 528-29 (1967).  In United States v. Harris, 403 U.S.

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

4

573, 577 (1971), the Court confirmed that a search warrant must be properly supported by probable cause.

In order to satisfy the warrant requirement, a magistrate presented with a search warrant application must consider the acts and circumstances presented in the warrant application and supporting affidavit in a practical common sense manner and make an independent assessment regarding probable cause. Illinois v. Gates at 238; *see* also Aguilar v. Texas, 378 U.S. 108, 109-113 (1964). The evidence must provide the magistrate with a "substantial basis" for the probable cause determination. Illinois v. Gates at 238-239. A district court must be leery that a magistrate might be unwittingly serving as a "rubber stamp for the police" by ratifying "the bare bones conclusions of others." United States v. Hopkins, 128 F. Supp.2d. 1, 4 (D.C. 2000) citing Illinois v. Gates, supra.

The crucial element when determining whether probable cause supports a search warrant is whether it is reasonable to believe that the items to be seized will be found in the place to be searched. Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978). This "nexus" inquiry is especially important when the place to be searched is a private home because the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980). In other words, probable cause that a particular person possesses contraband is usually not, without more, enough to obtain a warrant to search the person's residence for that contraband. United States v. Hopkins, 128 F. Supp. 2d. 1, 5 (D.C. 2000). Where probable cause does not exist the evidence seized in violation of the Fourth Amendment should be suppressed. Id.

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

5

Under the "good faith exception" to the exclusionary rule, however, evidence need not be suppressed when police obtain the evidence through objective good faith reliance on a facially valid warrant that later is found to lack probable cause. See United States v. Leon, 468 U.S. 897, 920, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). The Supreme Court in Leon held that that a good faith exception to the exclusionary rule was appropriate because when officers engage in objectively reasonable law enforcement activity, suppression would not advance the exclusionary rule's goal of deterring police misconduct. See id. at 919-22. The Court in Leon went on to identify four situations in which it is not appropriate to apply the "good faith" exception because the officer "will have no reasonable grounds for believing that the warrant was properly issued." United States v. Leon, 468 U.S. at 923. Those situations are: (1) where the magistrate issued the warrant based on a deliberately or recklessly false affidavit; (2) where the issuing magistrate failed to act in a neutral and detached manner; (3) where a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized –that the executing officers cannot reasonably presume it to be valid." Id.[1]

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

### III.   ARGUMENT

In the instant case, there can be no dispute that Mr. Sugg's Fourth Amendment[2] rights were violated. The police searched the premises over objection without a warrant. Such

---

[1] At issue in this case is the applicability of the first and third exceptions to the "good faith" exception.

[2] Mr. Suggs lived at the 10th Street address at the time of the search; therefore, he has standing to contest the search in this case. See Rakes v. United States, 439 U.S. 128,143 (1978).

search was per se unreasonable under the Fourth Amendment. It was only after a search was performed that the premises were secured and a warrant thereafter sought and obtained. Hours later police executed the warrant in an attempt to cure the earlier constitutional violations. Were this transparent attempt to cure the blatant constitutional violation of a warrantless search successful it would vitiate the very substance of the Fourth Amendment protections. These facts alone warrant suppression.

Notwithstanding the above, it is also worthy of note that the warrant, which was sought and obtained to cure the earlier Fourth Amendment violation, is itself infirm. First, the Affidavit (a copy of the Affidavit is attached as Exhibit 1) submitted by the detective in support of the search warrant does not allege sufficient facts to establish the probable cause mandated by Illinois v. Gates, 462 U.S. 213 (1983). Secondly, there was false and/or misleading information in the Affidavit and Judge Rafael Diaz was intentionally misled by the information set forth in the Affidavit, as prohibited by United States v. Leon, 468 U.S. 897 (1984); Franks v. Delaware, 438 U.S. 154 (1978). Finally, the warrant was overly broad and the search conducted in this case exceeded the scope of the warrant. The warrant is almost in its entirety, boilerplate. One paragraph, #3, makes specific reference to the factual basis for the application. It reads as follows:

> 3. On March 27, 2007 the D.C. Fire Department **responded** to 4000 10th Street, N.E. **for a suspicious odor.** Investigator Michael Eames assisted the D.C. Fire Department and **smelled a strong chemical odor consistent with PCP emanating from inside 4000 10th Street**, N.E. The **odor was also observed by D.C. Fire Department personnel on the scene.** 4000 10th Street, N.E. was **secured for the application of a D.C. Superior Court Search Warrant**.

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

With regard to probable cause, the alleged facts are insufficient to establish probable cause to believe that drugs were being sold from the house or to otherwise justify search of the entire premises for "seizure of illicit drugs, drug paraphernalia, records or papers relating to the possession or distribution of illicit drugs, photographic or video evidence showing evidence of illegal activity, safes and money accumulated or derived from drug trafficking . ." The warrant makes no reference whatsoever to the prior searches earlier that evening inside the premises. The Affiant sets forth two pages of boilerplate and three sentences of misleading and general conclusory statements regarding facts of which he had no personal knowledge. The Affiant provides no information regarding the background or qualifications of either the Fire Department personnel or Investigator Eames; no reference to their "presumed" or "inferred" ability to recognize or experience in recognizing the "odor consistent with PCP." It is simply void of any basis upon which the Judge could conclude they were qualified to make such a conclusion; the Judge clearly simply rubber stamped this request.

The Affidavit also contained false and/or intentionally misleading representations. The three sentences of paragraph #3 were at best recklessly misleading. As noted, the warrant makes no reference to the prior full blown warrantless searches by MPD and the Fire Department that evening. In addition, the Affidavit references that the Fire Department "responded [to a complaint] for a suspicious odor." This is misleading. It is now evident from the Suggs wiretap that an alleged 6:28 p.m. conversation between Suggs and his girlfriend was monitored, as follows:

"3-27-2007  6:28 p.m.

Suggs: Hello
Nikki:  I could smell that stuff when I pulled up, when I got out the car.

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

8

Suggs: Say what
Nikki: I could smell it when I got out the car
Suggs: Got out the car?
Nikki: Yeah, outside
Suggs: Uh hah.
Nikki: and it was a little police officer on the bike, so you know
Suggs: He was on the bike
Nikki: yeah you know how they ride the bikes
Suggs: What did he do
Nikki: He was just riding the bike on the corner, but if you know what the smell is, you know what the smell is, that what I'm just saying.
Suggs: You smelled it like that?
Nikki: I knew what it was when I walked up.
Suggs: Right, but I'm just saying it was just as soon you got out the car you can smell the odor.
Nikki: Like when I got on the sidewalk
Suggs: Ah hah, it was that strong?
Nikki: Yeah, I don't know if it was cause the upstairs window was open or what, but
Suggs: Where you at
Nikki: On my way to practice
Suggs: Alright I'll get something."

Upon information and belief, the Fire Department and Police did not respond to a complaint about a suspicious odor, as they advised Mr. Suggs on the scene, they initiated it. Thus, instead of having "responded to 4000 10th Street N.E. for a suspicious odor" as they wrote in the Affidavit, they relied on information from the wiretap and used the Fire Department as a pretext to enter the premises and search without a warrant. That misleading component, as well as failure to state that both the Fire Department and MPD had already searched the home, make reliance on the good faith exception inappropriate. Moreover, with regard to overbreath, the warrant authorizes, as noted above, an exhaustive search of a premises where there has been no representation that any illicit drug selling activity has ever taken place. Such an expansive authorization based on an alleged "odor" to search and seizure has no factual support or justification in the Affidavit.

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

Finally, a search warrant affidavit that contains erroneous facts, false statements or misrepresentations may render the search warrant and the ensuing search invalid.  Where a search warrant affidavit contains intentional or reckless misstatements of fact, such will render the warrant issued thereon invalid where the erroneous facts are material to the showing of probable cause.  <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).  Although Franks dealt only with affirmative false statements, its principles also allow attacks on warrants which are rendered deficient as a result of a misleading omission.

Under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), a defendant is entitled to an evidentiary hearing only if his attack on the accuracy of a supporting affidavit is "more than conclusory" and is accompanied by "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." <u>United States v. Gaston</u>, 357 F.3d 77, 80 (D.C. Cir. 2004).

Wherefore, for the foregoing reasons Mr. Suggs submits that all evidence obtained by Government agents during the March 27, 2007 searches must be suppressed.  A hearing on this matter is respectfully requested.

Respectfully submitted,

**THE DONAHUE LAW FIRM**

By: _____

Patrick M. Donahue
D.C. Bar No. 358184
18 West Street
Annapolis, Maryland 21401
Telephone: 410-280-2023

Attorney for Defendant, Anthony M. Suggs

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

METROPOLITAN POLICE DEPARTMENT
Washington, D.C.

Exhibit #1

AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
SEARCH WARRANT

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

**FOR THE ENTIRE PREMISES OF 4000 10th STREET, NORTHEAST, WASHINGTON, D.C. THE PREMISES IS A TWO STORY RED BRICK ROW HOUSE WITH A BASEMENT. THE FRONT PORCH HAS THREE RED BRICK COLUMNS. THE NUMERIALS 4000 ARE AFFIXED IN WHITE NUMBERS TO THE MIDDLE BRICK COLUMN. THE FRONT ENTRANCE TO THE RESIDENCE IS DESCRIBED AS WHITE WOODEN AND STAINED GLASS DOOR ADORNED WITH A SILVER HANDLE.**

1.      Your affiant, Officer Ramey Kyle, has been a sworn law enforcement officer since November of 2002. Your affiant is currently assigned to the Fourth District Focus Mission Unit. Your affiant has received 46 hours of narcotics instruction from the Maurice T. Turner Institute for Police Science and the Federal Law Enforcement Training Center in Glynco, Ga. Your affiant has been trained in the enforcement of D.C. Code, Uniformed Controlled Substance Act, and other related weapons and narcotics charges. Your affiant has participated in numerous narcotics and firearms related arrests in the District of Columbia. Your affiant has also obtained search warrants in connection with narcotics and firearms violations and has participated in the execution of numerous search warrants.

2.      Based on your affiant's training, experience and participation in narcotic and drug related investigations, your affiant knows that:

        a. Individuals who deal in illegal controlled substances maintain books, records, receipts, notes, ledgers, bank records, money orders and other papers relating to the importation, manufacture, transportation, ordering, sale and distribution of illegal controlled substances. These books, records, receipts, notes, ledgers, bank records, money orders, etc., are maintained where the dealers in illegal controlled substances have ready access to them, such as in secured locations within their residence, the residences of friends, family members, and associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house. Moreover, it is common that such records are maintained by traffickers on computers, cellular telephones, PDAs often called "Palm Pilots," and laptop computers and other personal electronic devices.

        b. Individuals who deal in illegal controlled substances routinely conceal in their residences or the residences of friends, family members, and associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house, large quantities of currency, financial instruments, precious metals, jewelry and other items of value, typically proceeds of illegal controlled substance transactions.

        c. It is common for individuals who deal in the sale and distribution of illegal controlled substances, particularly cocaine base, to secret contraband related to the activity, such as scales, razors, packaging materials, cutting agents, cooking utensils, microwave ovens, pots, dishes and other containers for converting cocaine into cocaine base, at their residences, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house. Specifically, persons dealing in cocaine base, also known as crack, commonly maintain quantities of cocaine hydrochloride, also known as cocaine powder, because it is a necessary ingredient in the production or manufacture of cocaine base, also known as crack.

d. Individuals who deal in the sale and distribution of controlled substances commonly maintain addresses and telephone number books or papers which reflect names, addresses and/or telephone numbers for their associates in their illegal organization. These individuals often utilize cellular telephones, pagers and telephone systems to maintain contact with their associates in their illegal businesses. These telephone records, bills and pager numbers are often found in their place of residence, or the residence of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

e. Individuals who deal in illegal controlled substances often take photos of themselves, their associates, their property and illegal contraband. These photos are usually maintained in their place of residence, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

f. Persons who traffic controlled substances maintain documents, letters and records relating to illegal activity for long periods of time. This documentary evidence is usually secreted in their residence, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house. This documentary evidence includes but is not limited to telephone numbers, telephone books, address books, credit card and hotel receipts, plane and bus tickets and receipts, car rental receipts, accounts and records in fictitious names, false identification, money orders, cashiers checks relating to cash transactions and records indicating the existence of storage facilities used in narcotics trafficking.

g. Individuals involved in narcotics trafficking often own, possess and/or use weapons as a means to facilitate their illegal drug activities. Such weapons are most often secreted in their residence, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

3. On March 27, 2007 the D.C. Fire Department responded to 4000 10th Street, N.E. for a suspicious odor. Investigator Michael Eames assisted the D.C. Fire Department and smelled a strong chemical odor consistent with PCP emanating from inside 4000 10th Street, N.E. The odor was also observed by D.C Fire Department personnel on the scene. 4000 10th Street, N.E., was secured for the application of a D.C. Superior Court Search Warrant.

4.     It is therefore respectfully requested that a Superior Court Search Warrant be issued for the entire premises of 4000 10TH Street Northeast, Washington, D.C., for the seizure of illicit drugs, drug paraphernalia, records or papers relating to the possession or distribution of illicit drugs, photographic or video evidence showing evidence of illegal activity, safes, and any money accumulated or derived from illicit drug trafficking, as more fully described in Attachment A, which are evidence of violations of D.C. Code 48-904.1.

_____  KYLE, Barren.
Affiant

Subscribed and sworn before me this 27th day of March, 2007.

Bill O'Malley
AUSA - approved the affidavit and warrant over the telephone and a mail to office. Kennedy Kyle, MPD

_____
Judge
Superior Court of the District of Columbia

ATTACHMENT A

a. Phencyclidine (PCP).

b. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, including PCP.

c. Address and telephone books and papers reflecting names, addresses or telephone numbers.

d. Books, records, receipts, bank statements, and records, money drafts, letters of credit, money order and cashiers checks, receipts, pass books, bank checks and any other items evidencing the obtaining, secreting, transfer, or concealment of assets in the obtaining, secreting, transfer, concealment or expenditure of money.

e. Electronic equipment, such as telex machines, facsimile machines, telephone answering machines, telephone paging devices, currency counting machines, and any information stored in memory or contained in any related hardware and software.

f. United States currency, precious metals, jewelry and financial instruments, including but not limited to, stocks and bonds.

g. Photographs, in particular, photographs of conspirators, of assets, or of controlled substances, and other documents identifying associates and conspirators.

h. Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including but not limited to small glass containers, jars, or bottles.

i. Indicia of occupancy, residency, or ownership of the premises, including but not limited to, utility and telephone bills, canceled envelopes, and keys.

j. Any and all electronic data processing and storage devices, computers and computer systems, keyboards, Central Processing Units, external and/or internal drives, external and internal storage devices such as magnetic tapes and/or disks or diskettes, together with system documentation, operating logs and documentation, software and instruction manuals, passwords, test keys, and encryption codes or similar codes that are necessary to access computer programs.

k. Any locked or closed containers believed to contain any of the above listed evidence.

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## SEARCH WARRANT

TO:  _____ CHIEF OF POLICE OR ANY OTHER LAW ENFORCEMENT OFFICER _____

(Specific law Enforcement Officer or Classification of Officer of the Metropolitan Police Department or other Authorized Agency)

AFFIDAVIT, herewith attached, having been made before me by, Officer Ramey Kyle, Badge 1985, Metropolitan Police Department Fourth District Focus Mission Unit that he has probable cause to believe that on the premises known as 4000 10th Street N.E., Washington, D.C., described more fully in the Affidavit in Support of a D.C. Superior Court Search Warrant which is incorporated herein by reference in the District of Columbia, there is now being concealed property, namely illicit drugs, drug paraphernalia, photographic or video evidence demonstrating the existence of illegal activity, safes, documents or records relating to the possession or distribution of illicit drugs or to the accumulation of assets and money derived from drug trafficking as more fully set out in Attachment A hereto which is incorporated herein by reference;

WHICH IS in violation of D.C. Code 48-904.1 and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the above designated premises and that the foregoing grounds for issuance of the warrant exist.

YOU ARE HEREBY AUTHORIZED within 10 days of the date of issuance of this warrant to search at any time of the day or night, the designated premises for the property specified, and if the property be found there

YOU ARE COMMANDED TO SEIZE IT, TO WRITE AND SUBSCRIBE in an inventory of the property seized, to leave a copy of this warrant and return, and to file a further copy of this warrant and return with the Court on the next Court day after its execution.

Issued this 27th day of March, 2007        _____ Rafael Diaz _____

Judge, Superior Court of the District of Columbia

---

## RETURN

I received the above warrant on ___MARCH 27___, 2007 and have executed it as follows:
On ___MARCH 27___, 2007 at 10:01 PM., I searched the premises described in the warrant and I left a copy of the warrant and return with ___ON DINING TABLE___ properly posted.

(name of the person searched or owner, occupant, custodian or person present at place of search)

The following is an inventory of the property taken pursuant to this warrant:

STYROFOAM COOLER CONTAINING (7) BOTTLES WITH LIQUIDS WITH A CHEMICAL SMELL, BLUE BAG CONTAINING 3 BOTTLES WITH LIQUIDS WITH A CHEMICAL SMELL, PAIR OF GLOVES, THREE MASKS, TWO FUNNELS, TRASH BAG CONTAINING THREE BUCKETS AND PYREX, $7,000 IN U.S. CURRENCY, RECIEPT, INCENSE, SEVEN BOTTLES WITH LIQUID WITH CHEMICAL SMELL, BLACK PLASTIC BAG, CLEAR PLASTIC BAG, LEATHER BAG

This inventory was made in the presence of INV. EAMES, SGT. BAXA, OFC. EDELEN, OFC. CLIFFORD OFC. JANCZYK, OFC. AYLLON, OFC. B.JONES OFC. R. JONES

I swear that this is a true and detailed account of all property taken by me under this warrant.

_____ Executing Officer

Subscribed and sworn to before me this 28th day of ___March___, 2007

_____ R. Winter _____

Judge, Superior Court of the District of Columbia