UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY SUGGS,<br>         Defendant. | Crim. No. 07-152-01 (ESH) |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS PHYSICAL EVIDENCE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this opposition to defendant's Motion to Suppress Evidence. The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

I.     FACTS

In the fall of 2005, law enforcement developed information that Anthony Maurice Suggs was distributing large quantities of Phencyclidine (PCP) in the Washington, D.C. area. Law enforcement officers collected substantial evidence that Suggs was actively distributing gallons of PCP and cocaine. (Suggs is indicted, in a superseding indictment, in Criminal Case 07-152 with Conspiracy to Possess with Intent to Distribute and to Distribute One Kilogram or more of Phencyclidine; Unlawful Possession with Intent to Distribute One Kilogram or more of Phencyclidine and Aiding and Abetting; two counts of Unlawful Distribution of Phencyclidine; and Unlawful Distribution of Cocaine).

After obtaining credible evidence of Suggs' drug trafficking, the government prepared an affidavit in support of wire interceptions over the cellular telephone used by Suggs, and on January

8, 2007, the Honorable Rosemary M. Collyer, United States District Court Judge for the District of Columbia, found probable cause for the interceptions of Suggs' telephone, and approved the interceptions. Within two weeks of intercepting Suggs' telephone, law enforcement officers determined that Suggs' supplier of PCP was Lonnell George Glover. The government prepared an affidavit in support of wire interceptions over the cellular telephone used by Glover, and on February 9, 2007, Judge Collyer found probable cause for interceptions over Glover's telephone, and approved the interceptions. Also, after obtaining credible evidence that Glover used his pickup truck as an integral mode of transporting drugs, the government prepared an affidavit in support of oral interceptions in and in the vicinity of Glover's pickup truck, and on March 19, 2007, Judge Collyer found probable cause for interceptions in and in the vicinity of Glover's pickup truck, and approved the interceptions. Through the investigation it was learned that Suggs was residing with Ngozi Joy (Suggs's former girlfriend and co-defendant), at 4000 10th Street, N.E., Washington, D.C. On March 27, 2007, while law enforcement officers were monitoring Suggs' telephone, law enforcement intercepted calls between Suggs and Joy. Two calls were particularly significant to the execution of the search warrant at 4000 10th Street, N.E. The first telephone conversation occurred at 6:28 p.m, and is detailed as follows:

>Suggs: Hello.
>
>Joy: I could smell that stuff when I pulled up, when I got out the car.
>
>Suggs: Say what?
>
>Joy: I could smell it when I got out the car.
>
>Suggs: When you got out the car?
>
>Joy: Yeah, outside.

Suggs:  Uh huh.

Joy:  And it was a, a, the little police officer on the bike, so I don't know.

Suggs:  He was on the bike.

Joy:  Yeah you know how they ride the bikes.

Suggs:  And what did he do, I mean what was he doing?

Joy:  He was just riding the bike on the corner, but if you know what the smell is, you know what the smell is, that's what I'm just saying.

Suggs:  You smelled it like that?

Joy:  I knew what it was when I walked up.

Suggs:  Right, but I'm just saying it was just as soon you got out the car you can smell the odor.

Joy:  Like when I got on the sidewalk.

Suggs:  Uh huh, it was that strong?

Joy:  Yeah, I don't know if it cause the upstairs window was open or what, but . . .

Suggs:  Where you at?

Joy:  On my way to practice.

Suggs:  Alright I'll get something.

Joy:  Huh?

Suggs:  Okay, I, I will get something.

Joy:  Alright.

Immediately after law enforcement heard the conversation between the defendant and Joy, law enforcement called the Metropolitan Police Department ("MPD"), and instructed them that they contact the Washington, D.C. Fire Department regarding a suspicious odor emanating from 4000

10th Street, N.E.  Other law enforcement officers went to police headquarters and began to prepare an affidavit in support of search warrant, and a search warrant.  Law enforcement officers entered the 4000 block of 10th Street, N.E., walked towards the residence at 4000 10th Street, N.E., and immediately smelled a strong odor consistent with PCP.  Law enforcement officers on the scene reported back to the law enforcement officer preparing the affidavit in support of search warrant and search warrant, and provided them with the additional details that had developed.  Law enforcement officers also observed vapors emanating from the attic window in the residence, which was partially ajar. The defendant was standing inside the front doorway of 4000 10th Street, N.E., observing law enforcement and fire department personnel. The fire department personnel approached the defendant, there was a brief discussion regarding the odor coming from the residence, and the fire department requested the defendant exit the residence.  The defendant and Joy's juvenile daughter exited the residence.

At approximately 7:57 p.m., the defendant called Joy, and the following conversation occurred:

> Monique:  Thank you for calling Crimson Heat this is coach Monique how may I help you?
> Denver:  Coach Monique is my mother there?
> Monique:  And who would your mother be?
> Denver:  A coach Nikki (Ngozi Joy).
> Monique:  Oh sure, hold one second.
> Joy:  Hello.
> Denver:  Hold ma.
> Suggs:  Baby.

Joy:  Huh?

Suggs:  Where you at?

Joy:  Practice.

Suggs:  Come on home.

Joy:  Huh?

Suggs:  Come home.

Joy:  What?

Suggs:  You got to come home they got me and Denver out front they say, they talking about got a chemical smell or something they ain't got no search warrant or nothing so you got to be here, so I don't know can they, I mean how can they go on your premises like that.

Joy:  They got what, they.  Are they right there?

Suggs:  Yeah.

Joy:  Listening to you.

Suggs:  Yeah they standing right here.

Joy:  Alright I'm on my way.[1]

Fire department personnel entered 4000 10th Street, N.E., equipped with an instrument used to detect certain chemicals.  After fire department entered the residence, law enforcement officers standing outside the residence could see through the open front door, and the closed screen door.  Law enforcement officers could see smoke coming from the basement area.[2]  Fire department

---

[1] It is unclear whether the 7:57 p.m. call, between the defendant and Joy occurred before, during, or after the fire department entered the residence, and/or when law enforcement conducted the protective sweep, except to the extent that the law enforcement protective sweep was preceded by the fire department inspection for health and safety hazards.

[2] Indeed, the protective sweep disclosed that the "something" Suggs was going to get at the end of the 6:28 p.m. call was incense which he lit in an effort to mask the PCP odor.  There

personnel determined that there was a strong chemical odor within 4000 10th Street, N.E. Shortly thereafter, the defendant walked towards the front door of the residence, law enforcement officers told the defendant that he could not enter the residence, they were in the process of obtaining a search warrant for the premises, and that they were going to secure the residence. The defendant walked a short distance from the residence, and law enforcement officers entered the residence to conduct a protective sweep. The purpose of the protective sweep was to make certain that there was no one else inside the residence who could be injured by the nocuous fumes or destroy the evidence the officers had probable cause to believe was inside the residence. Law enforcement officers entered each room, looked in each closet and under each bed, to make sure that there was no other individuals inside the residence. The officers did not enter the attic. There was an overwhelming smell of PCP inside the residence, and there was an inordinate amount of incense burning inside the residence. Law enforcement officers did not find anyone inside the residence while conducting the protective sweep.

After conducting the protective sweep, Joy arrived. Nothing was seized from the residence during the protective sweep and the extent of sweep was no greater than necessary to locate any additional persons. Joy told law enforcement that she was the owner of the premises, and law enforcement told her what had occurred. Joy told law enforcement that the defendant lived at 4000 10th Street, N.E. Joy appeared to be very upset, glared at the defendant, who in turn said "It's mine, that's my beef."

Shortly before 10:00 p.m., law enforcement officers were approved by D.C. Superior Court Judge Rafael Diaz to enter 4000 10th Street, N.E. (See Exhibit 1, the search warrant for 4000 10th

---

was thus an open flame uncomfortably if not dangerously close to the volatile PCP.

Street, N.E.). The following items of criminal activity were recovered: a white foam cooler containing seven bottles of PCP, found inside a basement closet; a pair of rubber gloves, three facial masks, and two funnels found in a cabinet in the basement; black trash bags containing large buckets and a glass Pyrex measuring cup found in the basement; $7,000 in U.S. Currency and a withdrawal receipt for $7,000 in Suggs' name, found inside a men's jacket hanging in one of the bedroom closets; seven 32 ounce bottles containing PCP found in the attic; and a large quantity of incense. Overall, approximately 2 ½ gallons of PCP were recovered from the residence, with a street value of approximately $52,500. After the search, the defendant told Joy, "I can take my weight," in front of law enforcement, and then, as part of a carefully considered investigative strategy, law enforcement left without arresting anyone.

## II.     ARGUMENT

The defendant argues that the physical evidence must be suppressed, for the following reasons: (1) that the law enforcement officers searched the residence without a warrant (Def. Mot. at 6-7); (2) that the affidavit in support of search warrant for 4000 10th Street, N.E., does "not allege sufficient facts to establish probable cause" (Def. Mot. at 7-10); (3) that there was "misleading information in the Affidavit" (Def. Mot. at 7-10); and (4) that "the warrant was overly broad." (Def. Mot. at 7-10)." All of defendant's arguments fail, and his motion must be denied.

### A.     The Law Enforcement Officers Did Not Search Without a Warrant

The defendant argues that law enforcement officers searched 4000 10th Street, N.E., without a valid search warrant. Id. at 6. The defendant further argues that the law enforcement officers violated the defendant's Fourth Amendment rights when they searched the residence. Id. at 7. The defendant is completely incorrect in his assessment of the facts, and therefore, his claim is meritless.

First, as noted above, law enforcement officers entered the residence, before the search warrant was approved, to conduct a protective sweep for people to make certain that no one was inside the residence who could be harmed by the dangerous and volatile chemicals inside the residence. Contrary to the defendant's allegations, the law enforcement officers did not search the residence for evidence prior to obtaining the search warrant. In fact, nothing was seized - - and therefore, there is no evidence to suppress - - based on the initial protective sweep by law enforcement.[3]

Second, exigent circumstances justified and probable cause the initial protective sweep.[4] Law enforcement officers are permitted to conduct a protective sweep, to prevent immediate injury to themselves and others.[5] In the instant case, law enforcement officers had probable cause to

---

[3] The protective sweep analysis in this case is similar to a protective sweep in instances when law enforcement enters a residence to effectuate an arrest warrant. As noted in Maryland v. Buie, 494 U.S. 325, 331 (1990), "a search of a house or office is generally not reasonable without a warrant issued on probable cause." "There are other contexts, however, where the public interest is such that neither a warrant nor probable cause is required." Id. In Buie, the Court concluded that "as an incident to arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Id. See also, Chimel v. California, 396 U.S. 869 (1969). In United States v. Patrick, 959 F.2d 991, 996 (D.C. Cir. 1992), the Court noted that "Once the police were lawfully on the premises, they were authorized to conduct a protective sweep based on the reasonable belief that one of its inhabitants was trafficking in narcotics." In Patrick, the Court concluded that the plain view doctrine also applies to protective sweeps. Id. at 997.

[4] While the abundant probable cause collected from the entire investigation and including the wiretaps was not used to support the search, it can still be and was in fact considered by law enforcement in determining to make a protective sweep. They knew, almost to a scientific certainty, there was PCP on th premises and they determined to make a protective sweep to protect that evidence from any third party and to protect any third party from that evidence.

[5] See, e.g., United States v. Socey, 488 U.S. 858 (1988). To determine whether law enforcement had an objectively reasonable basis for concluding that there was an immediacy to enter a residence, the Court looks to "what reasonable, experienced police officer would believe if he observed the events in question as they unfolded." Id. The Court looks to the totality of the

believe that there was hazardous material, specifically PCP, inside 4000 10th Street, N.E.  Based on the investigation, the March 27th calls between the defendant and Joy, and the observations by the fire department and law enforcement on the scene, there was probable cause to believe that PCP was secreted inside the residence.  Due to the exigency of the situation, i.e., the volatility of the PCP, the strong odor emanating from the house, the smoke coming from the basement area (which could ignite the PCP), and the possibility that others may be in the residence, and law enforcement were justified - - and moreover duty bound - - in conducting a protective sweep.

Third, the doctrine of inevitable discovery moots the defendant's arguments for suppression based on the initial protective sweep.  In other words, even if the Court were to determine that the initial entry by law enforcement was an unlawful search, the evidence seized during the second search, after obtaining a lawful search warrant, permits the introduction of the seized evidence.  See, Segura v. United States, 468 U.S. 796 (1984).  In Segura, law enforcement entered an apartment unlawfully and remained within the apartment to secure it for 19 hours.  Meanwhile, other law enforcement officers obtained a search warrant. 468 U.S. at 800-01.  The Court held that the legality of the initial entry was irrelevant to the admissibility of the evidence first discovered during the search pursuant to a valid warrant.  Id. at 813-14.  As in this case,

> None of the information on which the warrant was secured was derived from or related in any way to the initial entry into petitioners' apartment; the information came from sources wholly unconnected with the entry and was known to the agents well before the initial entry. No information obtained during the initial entry or occupation of the apartment was needed or used by the agents to

---

circumstances and does not judge the reasonableness of the belief on the basis of hindsight.  Id.  Thus, if the belief is reasonable prior to the entry into the home, the entry will be justified, even if, as in this case, the home actually was unoccupied.  Id.

> secure the warrant. It is therefore beyond dispute that the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence now challenged. This evidence was discovered . . . following the entry, during the search conducted under a valid warrant; it was the product of that search, wholly unrelated to the prior entry. The valid search warrant was a "means sufficiently distinguishable" to purge the evidence of any "taint" arising from entry. Had police never entered the apartment . . . , the contraband now challenged would have been discovered and seized precisely as it was here. The legality of the initial entry is, thus, wholly irrelevant under [<u>Wong Sun v. United States</u>, 371 U.S. 471 (1963)] and <u>Silverthorne Lumber Co. v. United States</u>, 251 U.S. 385 (1920).

<u>Segura</u>, 468 U.S. at 814-15 (footnotes and internal citations omitted). In this instance the limited incursion of the protective sweep is "wholly unrelated" to the probable cause in the affidavit since the 6:28 call makes clear that "it" can be smelled from the street.

Therefore, the initial entry, which law enforcement effected solely to prevent potential injury to others is irrelevant to the defendant's argument. The search of the house, during which law enforcement found PCP and other indicia of drug trafficking, was conducted pursuant to a valid warrant, and the evidence should be admitted.

**B.      The Affidavit in Support of Search Warrant for 4000 10th Street, N.E. Does Contain Sufficient Facts to Establish Probable Cause**

The defendant next contends that there was insufficient evidence to establish probable cause in the affidavit in support of search warrant. (Def. Mot. at 7-10). A review of the affidavit makes clear that there was ample facts to support a probable cause finding, and Judge Diaz did in fact find probable cause.

As a general rule, probable cause exists when known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief than an offense has been or being committed.

United States v. McEachin, 670 F.2d 1139, 1142 (D.C. Cir. 1981) (internal quotation and citations omitted). "In the case of a search, probable cause exists when circumstances known to a police officer are such as to warrant a person of reasonable caution in the belief that a search would reveal incriminating evidence." Id. A review of the facts in the affidavit in support of search warrant include, that both MPD Investigator Michael Eames and fire department personnel smelled PCP (obviously an illegal narcotic), coming from 4000 10th Street, N.E. Law enforcement did not include in the warrant the facts concerning Joy's call to the defendant. The reason these facts were not contained in the affidavit in support of search warrant was to protect the integrity of the investigation in general and the wiretap in particular. At the time of the preparation of the search warrant, there were wiretaps on the defendant's telephone, Lonnell Glover's telephone, and inside Glover's pick up truck. If these facts were contained within the affidavit, there was the likelihood the wiretaps would be compromised. The facts presented to Judge Diaz establish that a search of 400 10th Street, N.E., would reveal incriminating evidence (PCP). (Def. Mot. at 8). Moreover, the law enforcement officers were entitled to rely, in good faith, on the search warrant issued by a detached and neutral magistrate, even if the search warrant is later ultimately found to be unsupported by probable cause. United States v. Leon, 468 U.S. 897 (1984) (establishing "good faith exception" to signed search warrants).

  **C.**  **There Was No Misleading or Overbroad Information in the Affidavit**

The defendant also contends that the affidavit contained "misleading and generally conclusory statements," and it was overbroad. Although the affidavit may not be a long detailed document, it clearly establishes probable cause. Two individuals, both obviously trained in detecting chemicals from their respective professions, smelled PCP coming from 4000 10th Street, N.E.

Nothing more is needed to establish that there was probable cause to search the residence. The defendant contends that the affidavit "makes no reference to the prior full blown searches by MPD and the fire department." (Def. Mot. at 8). There is a reason for that. There were no "full blown searches" before the warrant was issued. As noted above, the protective sweep by law enforcement officers was justified by the facts and circumstances, and the exigency of the situation. The fire department were equally justified to enter the residence to determine the danger to the public. These facts were not misleading because these entries simply were not full blown searches.

Next, the defendant contends that when law enforcement noted in the affidavit that "the D.C. Fire Department responded to 4000 10th Street, N.E. for a suspicious odor," was "misleading." (Def. Mot. at 8). As noted above, Investigator Eames had the fire department called based on the wiretap call. The fire department responded based on the call by law enforcement, which is completely proper. Further, from Joy's call, it is apparent that an odor of PCP was coming from her residence which she shared with the defendant.

Finally, the defendant contends that he is entitled to a hearing because there are more than conclusory challenges to the affidavit in support of search warrant and allegations of deliberate falsehood or reckless disregard of the truth. (Def. Mot. at 10).

The test for reviewing the allegation that a search warrant was based on a false affidavit derives from the United States Supreme Court's decision in <u>Franks v. Delaware</u>, 438 U.S. 154 (1977). While the precise question in <u>Franks</u> was whether the defendant was entitled to an evidentiary hearing on the issue of falsity, subsequent judicial decisions have applied the <u>Franks</u> test in ruling on the validity of the warrant even after the facts relating to the alleged falsity of the supporting affidavit have been determined. <u>United States v. Richardson</u>, 861 F. 2d 291, 293 n. 2

(D.C. 1988) (citations omitted), cert. denied 489 U.S. 1058 (1989).  Thus the test to be applied as to whether the defendant is entitled to an evidentiary hearing on the issue of the alleged falsity of the statements in the affidavit, or whether statements proven to be untrue invalidate the warrant, is the same.

There is a "presumption of validity" of such affidavits, and the rule announced in Franks with respect to entitlement to an evidentiary hearing "has a limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded."  Franks, 438 U.S. at 167.  In order to be entitled to an evidentiary hearing a defendant must make "a substantial preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause" Id. at 155-156.  See also Richardson, 861 F. 2d at 293.  The defendant must make a substantial showing therefore that three facts are true:  first, that the affidavit contains a false statement, second, that the absence of the false statement in the affidavit would negate probable cause, and third, that the affiant made the false statement with the requisite scienter, that is, knowingly or with a reckless disregard for the truth.  Id. at 293-294 (declining to decide whether an inaccuracy in a warrant affidavit was material to probable cause in the absence of a contention that it was made intentionally or with reckless disregard for the truth).  Further,

> [t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specific portions of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Franks, 438 U.S. at 171.

This Court addressed a similar request in United States v. Antoine Jones, 451 F. Supp.2d 71 (D.C.C 2006).  In Jones, the defendant argued that the affiant assuming a search warrant "'omitted certain unhelpful facts while touting other facts for the sole purpose misleading' the issuing court." Id. at 78.  The defendant cited four specific instances where it was claimed the affiant of the search warrant were misleading.  Id.  This court concluded that "Jones' arguments are both factually incorrect and legally without merit." Id.  This Court also noted that Jones "offered no proof that [the law enforcement officer] made such misstatement or omissions with the requisite scienter-namely, that she intentionally tried to deceive the issuing court or manifested a reckless disregard for the truth." Id. 79.

In this case, assuming that the Court believes that law enforcement officers made misstatements or omissions, and they were material, the defendant has not established the requisite intent by law enforcement, warranting a Franks hearing.  The defendant has not made a substantial preliminary showing, but has misunderstood the facts and then misapplied them to the law.  The defendant's allegations are conclusory, and more importantly incorrect, and therefore, the Court should not require a Franks hearing.

WHEREFORE, the government respectfully requests that the Court deny defendant's motion.

                                    Respectfully submitted,

                                    JEFFREY A. TAYLOR
                                  UNITED STATES ATTORNEY

                                  WILLIAM J. O'MALLEY, JR.
                                  Assistant United States Attorney

                                  ANTHONY SCARPELLI
                                  Assistant United States Attorney

                                  JOHN K. HAN
                                  Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was caused to be served upon the attorney for the defendants, via Electronic Case Filing, this 21st day of November, 2007.

                                  ANTHONY SCARPELLI
                                  Assistant United States Attorney
                                  D. C. Bar No. 474-711
                                  555 4th Street, N.W., Fourth Floor
                                  Washington, D.C.  20530
                                  (202) 353-1679