IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.                              )<br>)<br>ANTHONY MARCUS SUGGS, et al., )<br>)<br>Defendants.              )<br>_____ ) | Criminal No. 07-152-01 (ESH) |

**REPLY TO
GOVERNMENT'S OPPOSITION TO DEFENDANT SUGGS'
MOTION TO SUPPRESS EVIDENCE**

The Defendant, Anthony M. Suggs, by and through his attorney, Patrick M. Donahue, hereby replies[1] to the Opposition to Defendant's Motion to Suppress Physical Evidence.

The Government, in support of its position that the Suggs' Motion be denied, argues first that law enforcement officers were entitled to conduct a protective sweep for the same reasons that a protective sweep is justified when law enforcement enters a residence to effectuate an arrest warrant. Secondly, the Government argues that there were exigent circumstances justifying the entry and initial protective sweep, that is, to prevent immediate injury to themselves and others. Thirdly, the Government argues that even if its initial actions constitute an unlawful search, the doctrine of inevitable discovery moots the Defendant's arguments. Finally, the Government argues that the affidavit submitted in support of the search warrant application contained sufficient probable cause and was neither misleading nor made in reckless disregard of the truth.

___

[1] This Reply will respond to the Government's arguments in the order in which they are presented.

While the Government has argued that the Defendant is incorrect in his assessment of the facts and that his claim is meritless, it is the Government's Opposition which must fail. Indeed, investigation demonstrates its facts are wrong and that the illegal entry into the home is not supported or justified under any theory proffered.

### I. FACTS

DC Fire Department Records disclose that at approximately 7:01 p.m. on March 27, 2007, the emergency dispatcher received a call from an anonymous caller whom we now know was Investigator Eames, Case Agent in this investigation, as follows:

| | |
|---|---|
| Dispatcher | Fire/EMS Dispatcher 12 - What is the exact location of your emergency? |
| UM | Hi ma'am um its 4000 10th Street northeast |
| Dispatcher | 4010? |
| UM | Yes ma'am |
| Dispatcher | The number 10? |
| UM | Yes ma'am the number 10 |
| Dispatcher | Is that an apartment or a private home? You said Northeast correct? |
| UM | Yes ma'am it's a private home |
| Dispatcher | And what is the phone number there, your call back number? |
| UM | Um I would rather not give my phone number |
| Dispatcher | OK what is the emergency? |
| UM | Um well ma'am I'm one of the neighbors there and there's a strong chemical odor coming from the uh, from the house |
| Dispatcher | From this particular home? |
| UM | Yes ma'am that exact address. Um its like an industrial chemical. I'm just, I'm concerned because I have children |
| Dispatcher | OK. Do you know - has it caused anyone to get sick? |
| UM | I – as soon as I smelled it – it doesn't – it's not its not its not housing chemicals its something different. I don't I don't know if its - I don't know if its some sort of drugs I mean I saw a special on Discovery Health and I was thinking maybe it's a drug lab or maybe its just I don't know maybe industrial chemicals but its something I'm not familiar with and it has me concerned. Also I haven't seen the actual neighbors that live at that address in a couple days so I'm worried. |
| Dispatcher | OK. Do you know if anyone's there or at home? |
| UM | There's a car out front so someone should be home but I'm just really |

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

2

| | | |
|---|---|---|
| | | concerned. I was hoping the police or the fire department will come. |
| | Dispatcher | Oh they're going to come, they're definitely going to come. I'm just trying to |
| | UM | God Bless you ma'am. Thank you very much. |
| | Dispatcher | OK. Help is being dispatched that's 400 10th, that's 4000 I'm sorry, 4000 correct? |
| | UM | 4000 10th street Northeast. |
| | Dispatcher | 4000 10th Street Northeast OK sir. Help is being dispatched to that location. OK? |
| | UM | Thank you very much ma'am. God Bless you. |
| | Dispatcher | You too. |

A Special Operations Hazmat Unit was dispatched along with numerous emergency vehicles and personnel. Attached as Exhibit 1 are the District of Columbia Fire and EMS Department Report and Event Chronology. It discloses the following:

Arriving within minutes were nearly a half dozen responding vehicles, countless fire personnel, and a Special Operation Hazmat Team. First responders on the scene reported, at 7:10:03, that there was no odor outside in the rear and at 7:13:40 reported that there was no odor in the home. At some point after the Fire Department were on the scene Metropolitan Police arrived and speculated that there was a "meth lab or PCP lab in the address." The Hazmat Entry Unit tested the air inside the home and reported no flammability hazard existed nor did they note any odor. At 7:39:25 the Fire Department left the matter with MPD.

Mr. Suggs denies that at the time the Fire Department Personnel arrived at 4000 10th Street, sometime after 7:00 p.m., that any odor existed outside of the residence. Independent witnesses confirm there was no odor. Indeed, the fire department personnel first responding confirm that prior to entry there was no odor outside in the back and after entry no odor was detected inside.

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

3

## II. ARGUMENT

The Government's first justification for crossing the threshold and entering the premises was to conduct a protective sweep for people and to make certain no one was inside the residence who could be harmed by the dangerous and volatile chemicals inside the residence. They liken their actions to the protective sweep in instances when law enforcement enters a residence to effectuate an arrest warrant, citing <u>Maryland v. Buie</u>, 494 U.S. 325 (1990), <u>Chimel v. California</u>, 396 U.S. 869 (1969), and <u>United States v. Patrick</u>, 959 F.2nd 991 (DC Cir 1992).

Each case relied upon seems inapposite. The Buie Court simply held that a warrantless protective sweep of a house <u>in conjunction</u> with an arrest is permissible if the Officer *reasonably believes the area to be swept harbors individuals posing a danger to the officers or others*. In that case police crossed into the home to effect an arrest and were legitimately on the premises. The Chimel Court held that the search of the Defendant's entire home following his arrest on a warrant was unlawful and observed that any search of his person and the area from within which he might, "gain possession of a weapon or destructible evidence," was appropriate. Again, the police were legitimately on the premises as the Defendant's wife had allowed police in the home to await his return from work. Finally, this Circuit applied such reasoning to a consent search in the <u>Patrick</u> case. In that case police were inside the home by consent. That case involved a roommate narcotics trafficker also on the premises while a consent search was taking place. He was found to have been reaching for a gun. The Court held that because of the presence of the narcotics trafficker a protective

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

sweep, in view of the potential danger, was justified. Again the Court found the police legitimately inside the premises.

In the instant matter the police were not legitimately inside the premises. In fact, police had no warrant to arrest the Defendant, their target. If they had probable cause to arrest him they chose not to; in fact, they were not there to arrest the Defendant. Moreover, for the entire encounter, Mr. Suggs was on the front lawn in the company of officers. Indeed, no arrest warrant existed and no arrest was made. Nor was consent given to enter the premises; in fact, entry was accomplished over objection. Those factual distinctions deserve emphasis, the Police in the instant case simply assert, in effect, that probable cause to believe drugs are in the home allows them to cross the threshold and enter the home. The Defendant submits that this aggressive law enforcement mentality is precisely why the Supreme Court has trumped such view and observed that, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972).

The Government's next justification for the protective sweep is "exigent circumstances." The Government makes clear that the purpose of the protective sweep was to "make certain there was no one else inside the residence who could be injured by the nocuous fumes or destroy the evidence the officers had probable cause to believe was inside the residence." (Government Opposition at page 6).

The Supreme Court has declared that searches and seizures inside a residence without a warrant are "presumptively unreasonable," Payton v. New York, 445 U.S. at 586, 100 S.Ct. at 1380, and the police bear a "heavy burden when attempting to demonstrate an urgent need" that might justify a warrantless search. Welsh v. Wisconsin, 466 U.S. 740, 750, 104, S.Ct.

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

5

2091, 2097, 80 L.Ed. 2d 732 (1984). *See also* <u>Vale v. Louisiana</u>, 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed. 2d 409 (1970); <u>United States v. Johnson</u>, 802 F. 2d 1459, 1461 (D.C. Cir. 1986) ("The burden is on the prosecution to demonstrate that exigent circumstances were present.")

There is no question that this Court has held that the need to preserve evidence that may be lost or destroyed if a search is delayed and has long been recognized as an exigent circumstance. <u>United States v. Socey</u>, 246 F.2d 1439 (D.C. Cir. 1998) citing. <u>Johnson</u>, 802 F.2d at 1462. *See also* <u>United States v. Allison</u>, 639 F.2d 792, 794 (D.C. Cir.1980). Indeed this Court has also noted that this need may be particularly compelling where narcotics are involved, for "narcotics can be easily and quickly destroyed while a search is progressing." <u>Id</u>.

However, consistent with *Vale*, the Socey Court mandated that a police officer show an objectively reasonable belief that contraband is being, or will be, destroyed within a home by showing (1) a reasonable belief that third persons are inside a private dwelling and (2) a reasonable belief that these third persons are aware of an investigatory stop or arrest of a confederate outside the premises so that they might see a need to destroy evidence. *See* <u>Socey</u>, 846 F.2d at 1445. In addition, and moreover, the Socey Court made equally clear that police officers cannot deliberately <u>create exigent circumstances</u> to justify a warrantless entry into a private dwelling. <u>Id</u> at 1448.

In the instant matter, law enforcement had absolutely no objectively reasonable belief that contraband was being or would be destroyed. In fact, given the ongoing nature of the investigation and in particular the wiretap, they were fully aware, "almost to a scientific certainty," that Ms. Joy, her young daughter, and Mr. Suggs were the only occupants. Given

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

that Ms. Joy was not at home and Mr. Suggs and Ms. Joy's daughter were detained on the front lawn, no colorable argument exists that contraband was being or would be destroyed.

Moreover, there is compelling evidence that the Government deliberately created exigent circumstances in order to justify the warrantless entry. Investigator Eames essentially made a false claim to the Fire Department. He advised that he was a concerned neighbor, a neighbor with children for whom he was concerned, that he could smell a strange chemical odor coming from his neighbor's home, possibly the smell of a "chemical lab," and advised that he hadn't seen his neighbors for a couple of days, that their car was in front, and that he was worried [about them]. He asked for help, for the police or fire department. The Dispatcher promised they would come – and they did, in force.

Arriving within minutes were nearly a half dozen responding vehicles, countless fire personnel, and a Special Operation Hazmat Unit. First arrivers on the scene reported, at 7:10:03, there was no odor outside in the rear and at 7:13:40 reported no odor in the home. At some point after the Fire Department arrived Metropolitan Police advised them that they believed there to be a "meth lab or PCP lab in the address." The Hazmat entry unit reported no flammability hazard existed nor did they note any odor. At 7:39:25 the Fire Department left the matter with MPD. Given these facts, the Defendant suggests there can be little dispute that law enforcement did indeed create the exigent circumstance. In short, its subsequent actions and "protective" sweep cannot be justified as there was no colorable claim that police had a reasonable belief that contraband was being or would be destroyed and the exigency is one of their own making.

In addition, the Government argues that even if its actions violated Mr. Suggs' constitutional rights, he cannot claim harm because the doctrine of inevitable discovery

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

7

insulates the Government against the exclusionary rule. The Government notes that in <u>Segura v. the United States</u>, 468 U.S. 796, (1984), the Supreme Court held that notwithstanding an earlier illegal entry, the Fourth Amendment does not require suppression of evidence seized later from a private residence pursuant to a valid search warrant. The Court also makes clear, however, that the <u>warrant must be issued</u> on information obtained by law enforcement <u>before the entry</u> and <u>not related to the illegal entry</u>. The Government specifically argues that its evidence was the 6:28 p.m. call from Ms. Joy to Mr. Suggs. However, that information was not conveyed to the Magistrate or used as a basis for securing the warrant. The Government chose not to present that information for tactical reasons, which is its prerogative. By electing to use only information obtained during the illegal seizure and entry it cannot now assert the protection afforded by the doctrine of inevitable discovery.

Finally with regard to the affidavit, the Government argues that the affidavit submitted in support of the search warrant application contained sufficient probable cause and was neither misleading nor made in reckless disregard of the truth.

What law enforcement told the Judge was that:

1) The Fire Department responded for a suspicious odor;

2) Investigator Eames assisted the Fire Department and smelled a strong chemical odor consistent with PCP emanating from inside; and

3) The odor was also "observed" by DC Fire Personnel on the scene.

The Defendant submits that No. 1 is a half truth designed to mislead the Judge, that No. 2 is untrue in that Investigator Eames, by the time he arrived on the premises could not smell <u>anything</u> outdoors and had to cross the threshold to detect any odor; and, that No. 3 is

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

false in that it directly contradicts the Fire Department's own investigation report and chronology.

What law enforcement didn't tell the Judge was:

1) That it intercepted a call wherein two suspects discussed a smell emanating from the home at 6:28 p.m. and one of the suspects advised he would fix the problem;

2) That unbeknownst to the Fire Department, it was MPD Investigator Eames, in an effort to gain entry and seize the suspected drugs on the premises while maintaining his cover, that contacted the Emergency Fire Department Dispatcher and falsely reported that he was a neighbor with children of his own, that he was worried and concerned about his neighbors, whom he hadn't seen in a few days and whose car was in the driveway, and that the cause of his worry and concern for his children and neighbor was a strange chemical odor emanating from the premises, the smell of a, "drug lab";

3) That it was some 35 minutes following the intercepted call that the Fire Department dispatched a small force of Responders following the anonymous complaint;

4) That Fire Department personnel first on the scene reported that there was no odor in the backyard of the premises and that upon entry into the home no odor was detected;

5) That the MPD on the scene advised the Fire Department that they believed there may be a meth lab or PCP lab on the premises;

6) That the Hazmat Unit Entry Team which was sent in found that no hazard existed and made no report of odor on the premises; and

7) That the MPD after the Fire Department's entry into the home conducted a "protective sweep" wherein they detected the "overwhelming odor" of PCP.

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

The Defendant submits that by not disclosing any of these factors, the Court was misled by half truth and omission which renders issuance of the warrant invalid.

### III.  CONCLUSION.

WHEREFORE, for the foregoing reasons, Mr. Suggs submits that all evidence obtained by Government Agents during the March 27, 2007 searches must be suppressed. A hearing on this matter is respectfully requested.

Respectfully submitted,

**THE DONAHUE LAW FIRM**

By: _____
Patrick M. Donahue, Esquire
D.C. Bar No. 358184
18 West Street
Annapolis, Maryland 21401
Telephone:  410-280-2023

Attorney for Defendant, Anthony M. Suggs

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of December, 2007, that this Motion was served on all parties by the electronic filing system of the United States District Court for the District of Columbia.

_____
Patrick M. Donahue