IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No 07-152 (ESH) |
| | : | |
| ANTHONY M. SUGGS, *et al* | : | |

DEFENDANTS' JOINT MOTION FOR SUPPRESSION OF RECORDING
NOT MADE ON TELEPHONE OF ANTHONY SUGGS AND
MOTION FOR RECONSIDERATION OF
DENIAL OF MOTION TO SUPPRESS WIRETAP EVIDENCE

Defendant, Helery Price, through undersigned counsel, on behalf of all of the remaining Defendants in the case, respectfully requests that this Court (1) suppress the electronic recording of a conversation allegedly involving Defendant Price which was recorded <u>prior</u> to his telephone connecting with the telephone of Anthony Suggs and (2) reconsider its denial of Defendants' motion suppress all evidence arising from the unlawful electronic surveillance conducted by the Government on a telephone belonging to Anthony Suggs. As grounds therefore, Defendant states:

I. THE "REVERSE INTERCEPT"

1. On Wednesday, February 27, 2008, during the ongoing trial of the Defendants, Anthony Maurice Suggs, Ernest Milton Glover, Glendale Earl Lee and Helery Price, the United States introduced and played for the jury, Activation 3245, a conversation recorded on February 22, 2007, at 2:45 p.m. during the wiretap on the telephone belonging to Anthony Suggs. Although the transcript[ provided to the jury identifies

both Helery Price and Anthony Suggs as participants, Special Agent John Bevington, who had been previously permitted to testify that he could identify the voices of both men, testified that the conversation was actually between Defendant Price and another person present in his vicinity. Special Agent Bevington admitted on cross-examination that the ringing of the telephone heard before, during  and after the conversation was the telephone of Defendant Suggs. The transcript reflects that there was no conversation with Suggs or anyone else on Suggs' telephone and that Defendant Price had left no message on Suggs' voice mail. When asked how it was possible to pick up a conversation in the vicinity of Defendant's Price's telephone when there had been no connection with the Suggs telephone, Bevington testified that the data had been provided by the "phone company."

2. After the jury was excused, counsel for Defendant Price moved the Court to strike the recording, to suppress the recording and for a mistrial. Defendant asserted that a recording made of background conversation on Defendant Price's telephone before it established a connection with the Suggs telephone could not be considered as a recording made pursuant to the Suggs wiretap. The Court denied the motion for a mistrial but decided to take under advisement the issue about striking or suppressing the recording.

3. The following day, Thursday, February 28, 2008, the Court heard from the Assistant United States Attorney assigned to the case that the technology was such that as soon as Price dialed Suggs' telephone and hit "send" (the telephone of Price in question was a cellular telephone), anything picked up by the telephone was

transmitted to  the  FBI's "Voice Box" recording system. The government asserted that the act of dialing the Suggs telephone number was an "activation" on the Suggs telephone even though the Suggs telephone did not connect with the incoming call.[1] The Court denied Defendant's motion to strike / suppress and invited Defendant to "file something in writing."

4. Defendant submits, for the reasons set forth in the Memorandum of Points and Authorities, that the Court erred because (1) the "background conversation" on Defendant Price's telephone was not a "background conversation" which was authorized in the wiretap authorizations and (2) that a communication made to a person in the vicinity of a person <u>prior</u> to the establishment of a "wire" connection with a target telephone is not a "wire communication" subject to interception under an order authorizing wire interceptions.

## II. MOTION TO RECONSIDER

5. The procedural history of the litigation concerning the Suggs wiretap is convoluted, to say the least. On November 16, 2007, Defendants filed a Joint Motion To Suppress Wiretap Evidence relating solely to the wiretap on the Suggs telephone. On November 28, 2007, the United States filed an Opposition. On December 14, 2007, Defendants filed a Joint Reply to the government's Opposition; that pleading referred to new matters and the United States was given until January 4, 2008 to respond to the new matters in that Reply. In the meantime, on December

---

[1] The government also asserted that the intercept was on the Suggs telephone, but this is either misleading or simply wrong. Unlike physical interception conducted by actually "taping" into a actual telephone line connected to the target telephone, modern technology apparently permits the FBI to receive the information in digital form directly to the recording system in their offices.

18, 2007, the United States filed a Supplement to its Opposition containing a redacted periodic report. On January 3, 2008, Defendants filed a response to the government's Supplement.[2] The government then sought and was given until January 7, 2008, to file its Reply to the new matters in Defendants' Reply , as well as Defendants' response to its Supplement. On January 15, 2008, this Court <u>denied</u> Defendant's motion to suppress the Suggs wiretap.[3]

6. In their motion to suppress the wiretap, one of Defendant's contentions was that the government failed to "minimize" a significant number of non-criminal calls.[4] Among the reasons which the Court cited in denying Defendant's Motion was a ruling that the government had no obligation to minimize large numbers of otherwise nonpertinent calls lasting over two minutes because the calls did not last over <u>three</u> minutes, a claim which the United States had not made; the Court did accept, however, the argument of the United States that time when the target telephone was ringing should not count in calculating the duration of the calls. In making this argument, the United States did not disclose to the Court or to the defense that, in fact, the government <u>could, and did,</u> begin listening and recording while the target telephone was ringing. Defendants assert that this new revelation about the government's technological ability to eavesdrop constitutes a factual change to, at least part of, the Court's basis for its decision to deny the motion to

---

[2] Defendant was originally given until December 27, 2007 to file this response, but the Court extended the time until January 3, 2008 because counsel's computer had "crashed" and had to be professionally repaired.

[3] In the same Order, the Court <u>granted in part</u> Defendants' Motion to Sever.

[4] 18 U.S.C. § 2518(5) requires that even if a wiretap order is secured, such order shall contain a provision that the authorization to intercept shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter. This is referred to as the "minimization" requirement.

suppress the wiretap on minimization grounds.  Thus, Defendants seek reconsideration of that denial.

WHEREFORE, for the above reasons, as well as those set forth in the attached Memorandum of Points and Authorities, Defendants respectfully request that this Court (1) suppress the electronic recording of a conversation allegedly involving Defendant Price which was recorded <u>prior</u> to his telephone connecting with the telephone of Anthony Suggs and (2) reconsider its denial of Defendants' motion suppress all evidence arising from the unlawful electronic surveillance conducted by the Government on a telephone belonging to Anthony Suggs.

Respectfully submitted

/s/

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857

Attorney for Defendant Price

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :
                                  :
            v.                    :          Crim. No 07-152 (ESH)
                                  :
ANTHONY M. SUGGS, *et al*         :


MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS'  JOINT MOTION FOR SUPPRESSION OF RECORDING
NOT MADE ON TELEPHONE OF ANTHONY SUGGS AND
MOTION FOR RECONSIDERATION  OF
DENIAL OF MOTION TO SUPPRESS WIRETAP EVIDENCE

I. THE "REVERSE INTERCEPT"

1. On January 8, 2007, the Honorable Rosemary M. Collyer of the United States District Court for the District of Columbia signed an Order authorizing the interception of wire communications to and from mobile cellular phone number (240) 988-7588, a telephone number attributed to Defendant Anthony Suggs (the "target phone").  Specifically, the Order authorized the F.B.I and other participating law enforcement agencies "to intercept wire communications to and from the above-described telephone, including any background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use." *Order*, January 8, 2007, at 4.

2. Judge Collyer signed an Order extending the authorization for the interception of wire communications to and from the target phone on February 7, 2007.  The February extension Order employed language identical to that of the January initiation Order to describe the scope of the interceptions authorized.  *Order*, February 7, 2007, at 4.  Activation 3245 was intercepted

and recorded on February 22, 2007 and is therefore governed by the terms of the February extension Order.

3. Consistent with the February extension Order, only two categories of communications were permitted to be intercepted:

    a.      wire communications to and from the target phone, and

    b.      background conversations (oral communications) occurring in the vicinity of the target phone if it is off the hook or otherwise engaged.

Defendant contends neither category includes Activation 3245.

    A. "Background Conversation"

4. Activation 3245 apparently recorded Defendant Price attempting to call Defendant Suggs from another location. The conversation recorded was, therefore, in the vicinity of <u>Defendant Price's</u> telephone, not the target telephone. Moreover, the ringing on Defendant Suggs' telephone clearly demonstrates that the telephone was neither off the hook nor otherwise engaged. Thus neither condition for the recording of a "background conversation," has been met.

5. Defendant further contends that specifically authorizing recording of background conversations under specific circumstances, Judge Collyer implicitly did <u>not</u> authorize the United States to record background conversations in a different setting. *Compare, United States v. King*, 335 F.Supp. 523, 548 (S.D. Cal. 1971); *remanded in part on other grounds,* 478 F.2d 494 (9th Cir); *cert. denied*, 414 U.S. 846 (1973) (background conversations suppressed because not specifically described in the court order authorizing the wiretap) *with United States v. Couser*, 732 F.2d 1207, 1208-1209 (4th Cir. 1984) (refusing to suppress background conversations made

in vicinity of target telephone while it was off the hook, but noting better practice to obtain express permission.)

B. "Wire Communication"

6. An oral communication is "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). A wire communication is "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception …"  18 U.S.C. § 2510(1).

7. The "point of origin" of the communication contained within Activation 3245 is Mr. Price's speech.  The "point of reception" of Mr. Price's communication is the individual to whom he addressed his remarks. There is no evidence that the transmission of Mr. Price's words (origin) to his intended communicant (reception) took place over any wire, cable, or similar connection.  No one has claimed that Mr. Price knew Mr. Sugg's telephone was tapped, much less that he was purposefully directing his remarks to the FBI monitors intercepting the call.

8. The fact that Mr. Price's oral communication could be picked up by technology that turned <u>his</u> telephone into a recording device does not somehow transform it into a wire communication to the target telephone. There is no way in which Defendant Suggs, the target of

the wiretap, would have been able to hear this communication as he had neither answered the

ringing telephone nor allowed the voice mail feature to engage.[5]

## II. MINIMUM DURATION

9. Defendants asserted that the presumptive threshold for when the government

should make a decision as to whether a call was pertinent and should be monitored

further or was not pertinent and should be minimized was two minutes. *See*

Defendants' Motion to Suppress, n.7 at 15,. The United States apparently agreed, *see*

Government's Opposition at 12 (citing cases with two minute threshold). Despite the

apparent agreement of the parties and the ample case law establishing two minutes as a

presumptive threshold,[6] the Court *sua sponte* decided that the threshold should be <u>three</u>

minutes. On top of this change, the Court also accepted the government's argument that

time that a telephone was ringing should not count towards the duration of the call.

10. Neither the United States nor the Court cited to any authority that the time a

telephone is ringing should be subtracted from the  duration of the call and Defendants

---

[5] Defendant concedes that had Defendant, or others in his vicinity, continued talk <u>after</u> the Suggs telephone engaged, he would have no claim of unlawful interception. Left unanswered by the facts in this case is whether a conversation made after a target telephone engages and which could have been overheard on the caller's telephone acting as microphone but which would not have been distinct enough to been heard hear on the target telephone would be covered.

[6] *See, United States v. Macklin*, 902 F.2d 1320, 1328 (8th Cir. 1990); *United States v. Willis*, 890 F.2d 1099, 1102 (10th Cir. 1989); *United States v. Apodaca*, 820 F.2d 348, 350 (10th Cir. 1987); *cert. denied* 484 U.S. 903 (1987); *United States v. Capra*, 501 F.2d 267, 275-276 (2nd Cir. 1974).  *See also* Department of Justice Manual, cited in *United States v. Ozar*, 50 F.3d 1140, 1148 (8th Cir. 1995), endorsing a "two minutes up / one minute down" minimization technique. *But see, United States v. Losing*, 560 F.2d 906, n.1 at 909 (8th Cir. 1977); *cert. denied* 434 U.S. 969 (1977) (conflating two and three minute calls).

asserted that there were sound reasons why such time should not be excluded.[7]   The revelation of the technology underlying Activation 3245, however, disproves the assumption that the time that the telephone is ringing is simply "wasted" time. Indeed monitoring can apparently begin instantaneously.[8] Therefore, Defendants seek reconsideration of their motion to suppress the wiretap on minimization grounds. In so doing, Defendants adopt the points and authorities previously cited in their pleadings

Respectfully submitted

/s/

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857

Attorney for Defendant Price

---

[7] Trying to subtract the ringing time would further complicate the needed analysis with little commensurate benefit. The two (or even three) minute threshold has the benefit of being a "bright line" test. Trying to measure the time the telephone was ringing and subtract it from the duration of the call would require an entire new category of record keeping, and would likely require some form of manual recording.

[8] Even if there were nothing to record during the ringing period, the monitoring agent can observe whether the call is an outgoing or incoming call and, more importantly, can determine the other telephone number, thereby identifying the other person, if the number is known, or being alerted to a potential new party if the number is unknown. In cases where the number is listed, the monitoring agent may even be able to identify the person in whose name the telephone is listed. Having this information at the outset of actual monitoring of the call is helpful to monitoring agent because it allows him or her to more easily place the call into context. Moreover, if the monitoring agents are actually developing "patterns of innocence" and "patterns of involvement," knowing who the other party is would presumably make this decision easier to make quickly.